# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3440-20

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

S.N.H. (deceased),

     Defendant,

and

S.L.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF N.H.,
a minor.

_____

Argued August 30, 2022 – Decided September 7, 2022

Before Judges Haas, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FG-08-0051-18.

Bruce P. Lee, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Bruce P. Lee, on the briefs).

Salima E. Burke, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Salima E. Burke, on the brief).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, of counsel; Nancy P. Fratz, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Appellant S.L. appeals from a July 1, 2021 order terminating his parental rights and granting the Division of Child Protection and Permanency (Division) guardianship of his son, N.H. We affirm.

N.H. was born in 2015 and has been in the Division's custody since his second birthday. He suffers from numerous physical, neurological, developmental, and behavioral conditions, including flaccid paralysis, cerebral palsy, asthma, club feet, failure to thrive, and autism. He is unable to walk independently and requires leg braces, a wheelchair, mobile stander, and gait

trainer. Unmonitored, N.H. can easily and severely injure himself simply by attempting to ambulate. He is fed through a feeding tube, which must be monitored. N.H. is treated by sixteen specialists who provide overlapping medical care, which has been coordinated by his resource parents who intend to adopt.

S.L. is disabled and receives monthly benefits from the Veterans Administration (VA). His VA benefits are administered by a financial fiduciary. He has a thirty-year history of mental health problems, including schizoaffective disorder (bipolar type), depression, and suicidal ideations. He has been voluntarily and involuntarily committed on several occasions. He has a history of domestic violence and substance abuse, involving severe cocaine and crack cocaine use. As a result, S.L. has been frequently incarcerated and on various occasions unable to care for N.H.

In addition to the services provided for N.H., the Division deployed a battery of services for S.L.'s benefit throughout this matter, including: substance abuse, psychological, and psychiatric evaluations; referrals to intensive outpatient treatment; family team meetings; visitation; counseling; parent education programs; and drug screens. With a few exceptions, S.L. failed to cooperate or complete the services provided.

A-3440-20

In March 2018, at the onset of the guardianship proceeding, the court appointed a guardian ad litem (GAL) for S.L. at defense counsel's request. One year later, S.L. executed an identified surrender of his parental rights to N.H.'s half-sister. During the surrender proceeding the GAL advised the court S.L. understood what was happening and was competent to complete the surrender. S.L.'s counsel also represented that after speaking with S.L. and reviewing the medical information, including the Division's forensic psychology expert's report, S.L. could complete the surrender. The court also questioned the Division's expert who testified and agreed, after interviewing S.L. and reviewing his medical records. The parties declined to cross-examine the expert. The court also questioned S.L., who testified he understood the nature of the proceedings.

In December 2019, S.L. moved to vacate the surrender, which the court denied. However, in November 2020, N.H.'s resource parents committed to adopting him—a plan his half-sister supported—and the court ultimately vacated the identified surrender, reopened the guardianship, and sua sponte appointed a GAL for S.L. The GAL investigated S.L.'s competency and issued a report, provided in advance to the court and the parties, concluding S.L. did not require the assistance of a guardian.

A-3440-20

In March 2021, the court held a hearing to review the GAL's report. The GAL, S.L.'s counsel, Law Guardian, and the Division agreed S.L. was competent. Thereafter, S.L. was questioned by his counsel under oath and confirmed he understood the GAL was withdrawing from the case, that S.L. had discussed the matter with counsel, and was satisfied with counsel's representation. The court asked S.L. if he had any questions about the process and S.L. responded he did not, and agreed he no longer needed a GAL and would instead be working directly with counsel in defense of the guardianship matter. Based on the testimony and no material dispute in fact, the court concluded S.L. no longer required a GAL and granted the GAL's request to be relieved.

A two-day guardianship trial occurred in June 2021. The Division called its caseworker, N.H.'s resource mother, S.L., and the expert. The Division also admitted thirty-four exhibits into evidence. S.L.'s counsel also adduced testimony from S.L. as the defense's sole witness. The trial judge found all the witnesses credible and S.L partially credible.

The judge found the Division met by clear and convincing evidence all four prongs of N.J.S.A. 30:4C-15.1(a). She concluded S.L. harmed, and would continue harming, N.H. by not addressing his mental health and substance abuse problems. She noted S.L.'s frequent hospitalizations made him unavailable to

care for N.H. for periods at a time.  The second statutory prong was met because S.L. "is not able now and he won't be able in any reasonably foreseeable future [to meet N.H.'s] needs . . . despite all the reasonable efforts of the Division throughout the course of this child's placement . . . ."  In addition to S.L.'s failure to address his own problems, the judge found S.L. had no understanding of N.H.'s medical needs, nor how to seek and coordinate his medical care, let alone the willingness to do so.

The judge found the Division met the third statutory prong and recounted the services offered to the family.  Further, the Division considered alternatives to the termination of parental rights.  The judge listed the relatives the Division explored as placement options, including the child's half-sister.  However, the resource parents utilized the services provided and assured N.H.'s needs were met throughout the litigation.  As a result, N.H.'s condition improved, and the resource parents wished to adopt.

The judge concluded the fourth statutory prong was met and a termination of parental rights followed by adoption would not do more harm than good.  She credited the Division's expert, who testified S.L. and N.H.'s bond was "weak to moderate" and N.H. would not be at risk of long-term harm if the parental

6

relationship were severed. Noting N.H. had been in placement "for more than half of his life" the judge credited the expert's testimony describing

> the resource parents' bond with the child as strong and centrally important to him. He sees these folks as his parents. They are his primary caretakers and have been throughout this litigation. . . . [N.H.] would . . . sustain severe and enduring harm if removed, [and] the loss of the caretakers . . . would be traumatic.

Further, S.L. "would be unable to mitigate that harm and he wouldn't be able to mitigate it in the foreseeable future . . . ."

S.L. raises the following arguments on appeal:

> I. BECAUSE [THE DIVISION] PERPETUATED THE FOSTER PARENTS' ERRONEOUS CONCERNS THAT S.L. COULD LITIGATE "OVER AND OVER AGAIN," AND BECAUSE THE FOSTER PARENTS WERE MISINFORMED AGAINST THE PERMANENT NATURE OF A [KINSHIP LEGAL GUARDIANSHIP (KLG)] ARRANGEMENT, THE FOSTER PARENTS' RELIANCE ON MISINFORMATION TO CHO[O]SE KLG OVER ADOPTION WARRANTS A REVERSAL AS A MATTER OF LAW.
>
> II. BECAUSE S.L.'S MEDICAL RECORDS DEMONSTRATED A THIRTY-YEAR HISTORY OF INVOLUNTARY COMMITMENTS, DELUSIONS[,] AND HALLUCINATIONS, THE TRIAL COURT'S [RULE] 4:26-2(b) RULING AGAINST A [RULE] 4:86 HEARING TO APPOINT A GUARDIAN WAS AN ABUSE OF DISCRETION.

a. The trial court's reliance on the GAL's findings, at a March . . . 2021 [Rule] 4:26-2(b) hearing, was an abuse of discretion because the GAL did not assess S.L.'s decision-making abilities.

b. Even if the GAL had relied on [the expert's] evaluations, the trial court's decision would still have been an abuse of discretion because the purpose of his evaluation was to opine on parental capacity, and because his assessment, as [the Division]'s expert witness, lacked independence.

III. S.L. WAS PROVIDED WITH INEFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL NEGLECTED TO MOTION FOR MISTRIAL AND REQUEST THE COURT DRAW AN[] ADVERSE INFERENCE BECAUSE OF THE RESOURCE FATHER'S ABSENCE AT TRIAL. (not raised below).

a. S.L.'s trial attorney provided ineffective assistance of counsel by failing to request the court to draw an adverse inference that the resource father did not want to adopt. (not raised below).

b. S.L.'s trial attorney provided ineffective assistance of counsel by failing to motion for mistrial. (not raised below).

IV. BECAUSE S.L. IS ONE HUNDRED PERCENT DISABLED AND WAS APPOINTED A FIDUCIARY BY THE VA, [THE DIVISION]'S FAILURE TO PROPERLY SERVE S.L. UNDER [RULE] 4:4-4[] WARRANTS REVERSAL AS A MATTER OF LAW. (not raised below).

V. BECAUSE [N.H.] LACKED COMPETENCE TO WAIVE HIS RIGHT TO FINANCIAL SUPPORT FROM S.L., THE COURT LACKED JURISDICTION OVER [N.H.] TO TERMINATE S.L.'S PARENTAL RIGHTS. IN THE ALTERNATIVE, THE COURT FAILED TO CONSIDER WHAT [E]FFECT THE LAW GUARDIAN'S WAIVER OF [N.H.]'S RIGHTS TO FINANCIAL SUPPORT WOULD HAVE UPON [N.H.]'S BEST INTERESTS UNDER PRONG FOUR OF N.J.S.A. 30:4C-15.1(a), WHICH REQUIRES A SHOWING THAT TERMINATION OF PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD TO A SUBJECT CHILD IN GUARDIANSHIP LITIGATION. (not raised below).

I.

Appellate review in termination of parental rights cases is limited. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the factual findings underlying the trial court's decision if they are supported by "'adequate, substantial, and credible evidence' on the record." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Reversal is warranted if the court's findings are "so wide of the mark

that a mistake must have been made[.]" <u>N.J. Div. of Youth & Fam. Servs. v. L.J.D.</u>, 428 N.J. Super. 451, 476 (App Div. 2012) (quoting <u>M.M.</u>, 189 N.J. at 279).

## II.

The statutory best-interests test requires the Division to prove the following four prongs by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

## A.

In Point I of his brief, S.L. challenges the trial judge's finding regarding the third prong. He argues the resource parents were persuaded by the Division

A-3440-20

to choose KLG over adoption, believing KLG was not a form of permanency for N.H. We find no merit to this contention.

The record is clear the resource parents understood the difference between KLG and adoption but were uncomfortable with the former because S.L. would continue to litigate parenting decisions or seek to undo the KLG altogether, as he attempted to do with the identified surrender. As argued in the Law Guardian's brief, the resource parents' concerns were not mistaken. N.J.S.A. 3B:12A-6(e)(4) preserves a parent's right to visitation or parenting time as determined by the court, and N.J.S.A. 3B:12A-6(f) permits a parent to file an application for return of the child.

The resource mother's testimony shows she understood the differences between KLG and adoption. She explained that she and her husband, who had adopted twice before, at first hesitated to adopt N.H. because they were concerned about his substantial care needs. However, the couple ultimately agreed to adopt, and she explained their reasoning as follows: "We love [N.H.] so much. And we have . . . good ties. And my husband's like, we can do this . . . . It's not going to be easy but we've got this." The caseworker and the expert's testimony echoed the resource mother's description of the decision-making process. The caseworker also testified the Division provided the

11

resource parents with its standard form outlining the differences between KLG and adoption.

The record does not support S.L.'s contention that the resource parents' path leading to adoption was borne of misinformation by the Division. Inasmuch as we are convinced the resource parents were not misled, KLG also was not an option because adoption was feasible and likely under the facts of this case. N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 508-10 (2004).

B.

In Point V of his brief, S.L. argues the trial judge's findings regarding the fourth statutory prong were flawed. He asserts the judge failed to consider the harms to N.H. by terminating parental rights, which in turn, would terminate his right to financial support from S.L., including his VA benefits. He notes the Law Guardian could not waive N.H.'s right to child support.

N.J.S.A. 30:4C-15.1(a)(4) "serves as a fail-safe against termination even where the remaining standards have been met." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 108 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 609 (2007)). "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interests will best be served by completely terminating the child's relationship

with that parent." Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 610 (1986)).

"It also is widely understood that a 'child deeply needs association with a nurturing adult' and that 'permanence in itself is an important part of that nurture.'" Ibid. (quoting A.W., 103 N.J. at 610). N.J.S.A. 30:4C-15.1(a)(4) is deemed satisfied "where it is shown that the bond with [the resource] parents is strong and, in comparison, the bond with the natural parent is not as strong[.]" In re Guardianship of K.H.O., 161 N.J. 337, 363 (1999). The Division "should offer testimony of a 'well[-]qualified expert who has had [the] full opportunity to make a comprehensive, objective, and informed evaluation' of the child's relationship with both the natural parents and the [resource] parents." M.M., 189 N.J. at 281 (quoting In re Guardianship of J.C., 129 N.J. 1, 19 (1992)).

At the outset, we note this argument was not raised at trial. However, we will address it because guardianship matters are categorically matters of great public interest. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (holding an appellate court need not consider questions not properly presented to a trial court, unless the issue raised relates to the jurisdiction of the trial court or concerns a matter of great public interest).

We are unpersuaded by S.L.'s arguments. The entry of a judgment granting guardianship does not terminate a parent's support obligation. See N.J.S.A. 9:2-20 ("The judgment so entered, unless otherwise specified therein, shall not affect the duties of the parents, custodian or guardian with respect to support and maintenance of the child."). The judgment entered here did not terminate S.L.'s support obligation. Even if it did, we are not convinced it would undo the trial judge's prong four findings and the unrebutted expert testimony ungirding the findings that a termination of parental rights would not do more harm than good. Indeed, the Division's expert not only conducted two psychological examinations of S.L. but performed two bonding evaluations. His detailed testimony that N.H.'s bond with the resource parents was "strong" and "centrally important" to the child, and that N.H. would suffer "a traumatic set of losses" by losing his resource parents that S.L. would be unable to mitigate was unrebutted.

### III.

In Point II of his brief, S.L. challenges the court's decision to relieve the GAL. S.L. argues the GAL's report was inadequate because he interviewed S.L. by telephone and did not review his VA records or consider the fact he had a financial fiduciary. S.L. argues the judge's reliance on the Division's expert was

14

also error because the expert was biased in favor of the Division and the expert's evaluation was for purposes of determining parental capacity not mental capacity. S.L. asserts a competency hearing was required under Rule 4:86.

Pursuant to Rule 4:26-2, when a GAL is appointed for a party the court directs the GAL to conduct an investigation to determine the party's "mental capacity and then to make a recommendation to the court whether [his or] her best interests require[] the filing of an action for a limited or general guardianship . . . in accordance with Rule 4:86." S.T. v. 1515 Broad St., LLC, 241 N.J. 257, 277 (2020). "The [GAL's] recommendations are not binding on the court; ultimately the court must make its own independent factfindings." Id. at 278-79.

The overwhelming weight of the evidence shows S.L. was not mentally incapacitated. As we recounted, the court twice appointed GALs who, after investigating, advised the court S.L. did not need a guardian. Defense counsel informed the court likewise on more than one occasion. The GAL explained he interviewed S.L. by telephone due to COVID-19 restrictions. S.L. has not shown how this impacted the GAL's recommendation. Furthermore, the court questioned S.L. at the surrender hearing and at a hearing preceding the trial after it vacated the surrender and he testified he did not require a guardian. The court

15

also had the benefit of the Division's expert report and testimony, showing that despite S.L.'s deficits, he understood the proceedings and was competent. The fact S.L. had a financial fiduciary does not convince us he required a guardian, because the scope of a financial fiduciary's duties is limited to managing a veteran's financial benefits. 38 C.F.R. § 13.30. Indeed, at trial S.L. testified he managed his social security disability funds himself. We discern no abuse of discretion in the court's decision to relieve the GAL and let S.L. proceed to trial with defense counsel.

## IV.

In Point III of his brief, S.L. alleges ineffective assistance of counsel because trial counsel did not ask the court for an adverse inference against the Division due to the resource father's non-appearance at trial. He claims the resource father's absence evidenced the fact he did not want to adopt N.H. Additionally, S.L. argues counsel was ineffective because he did not seek a mistrial on grounds that S.L. could not proceed to trial without a guardian.

In New Jersey Division of Youth and Family Services v. B.R., our Supreme Court held parents who are the subject of a termination of parental rights proceeding have the right to effective assistance of counsel. 192 N.J. 301, 304 (2006). Whether counsel rendered effective assistance to a parent is

16

reviewed through whether "(1) counsel's performance must be objectively deficient—i.e., it must fall outside the broad range of professionally acceptable performance; and (2) counsel's deficient performance must prejudice the defense—i.e., there must be 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 307 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

The failure to seek an adverse inference against the Division for the resource father's absence did not constitute ineffective assistance of counsel because the Division is not mandated to call resource parents to testify. N.J. Div. of Child Prot. & Perm. v. M.M., 459 N.J. Super. 246, 275 (App. Div. 2019). Even if this were the case, we have stated: "For an inference to be drawn from the nonproduction of a witness it must appear that the person was within the power of the party to produce and that his testimony would have been superior to that already utilized in respect [of] the fact to be proved." State v. Washington, 408 N.J. Super. 564, 577 (App. Div. 2009) (alteration in original) (quoting State v. Clawans, 38 N.J. 162, 171 (1962)). Notwithstanding the opportunity for the defense to call the resource father as a witness, his testimony would have been cumulative from his wife's, the caseworker's, and the expert's

testimony—all of whom described the resource parents' initial concerns and the deliberation process leading to the decision to adopt N.H.

We likewise reject S.L.'s claims trial counsel was ineffective for not seeking a mistrial over S.L.'s alleged incapacity. As we explained in section III, the court did not abuse its discretion in finding S.L. was competent to proceed to trial. Therefore, trial counsel was not ineffective for seeking mistrial on this issue. Moreover, as the Division notes in its brief, if trial counsel had argued S.L. lacked capacity it would have undermined the claim that he could parent N.H. and the overall defense to the termination of parental rights.

S.L.'s claims do not convince us counsel rendered constitutionally defective representation. Neither Strickland prong has been met.

V.

Finally, in Point IV of his brief, S.L. argues the Division should have served his financial fiduciary because he was completely disabled. He asserts the failure to do so meant the court lacked jurisdiction and mandates a reversal of the guardianship judgment.

Although this argument was not raised before the trial judge, it goes to the court's jurisdiction and therefore we must address it. Nieder, 62 N.J. at 234. The guardianship complaint was served on S.L. personally in accordance with

Rule 4:4-4. He was represented by counsel and two GALs who did not contest the service issue and is arguably equitably estopped from asserting it now on appeal. See Knorr v. Smeal, 178 N.J. 169, 178 (2003) (holding that equitable estoppel is intended to "prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment."). Regardless, there was no evidence the financial fiduciary did anything other than administer S.L.'s VA benefits. For these reasons, this argument lacks sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3440-20